IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY 1999 SESSION

FILED

September 9, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9811-CR-00401 |
| Appellee, | * | SULLIVAN COUNTY |
| VS. | * | Hon. Phyllis H. Miller, Judge |
| KYLE ROBERT BALL, | * | (Aggravated Burglary and |
| Appellant. | * | Theft Under $500.00) |

For Appellant:

Julie A. Rice, Attorney
P.O. Box 426
Knoxville, TN 37901-0426
(on appeal)

Richard A. Tate
Assistant Public Defender
Second Judicial District
P.O. Box 889
Blountville, TN 37617
(at trial)

For Appellee:

Paul G. Summers
Attorney General and Reporter

Marvin S. Blair, Jr.
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243-0493

Barry P. Staubus
Assistant District Attorney General
P.O. Box 526
Blountville, TN 37617

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

<u>OPINION</u>

The defendant, Robert Kyle Ball, was convicted of aggravated burglary and one count of theft under $500.00. The trial court imposed a Range II sentence of ten years on the aggravated burglary and eleven months and twenty-nine days for the misdemeanor theft. Fines imposed totaled $2,000.00. The sentences are to be served consecutively to each other and consecutive to a prior sentence for which parole had been revoked.

In this appeal of right, the defendant challenges the sufficiency of the evidence and contends that the sentence is excessive. We affirm the judgment of the trial court.

On the evening of July 4, 1997, there was a break-in at the Kingsport apartment of the victim, Dexter Carl Morelock, Jr., during which an AMT Mark III .30 caliber carbine pistol, a reloading die, and two boxes of .30 caliber ammunition were stolen from a bedroom closet. Earlier that afternoon, between 6:00 and 6:30 P.M., the defendant, who "was drinking pretty heavily," stopped as he drove his vehicle by the apartment of the victim. The victim, who was standing in the front yard, had just returned from a shooting practice range and had in his possession the AMT pistol. The weapon was unusual because it fired rifle cartridges. The victim, who had known the defendant for fifteen or twenty years, had not seen him for two or three years prior to the meeting at the apartment. When the defendant saw the pistol, he asked the victim if he would sell it, to which the victim replied, "No, sir." The defendant then asked permission to use the victim's bathroom and did so, after which the victim invited the defendant to a July Fourth picnic at his wife's mother's residence. During the time before the victim and his wife left to go to the picnic, the defendant persisted in his effort to purchase the pistol. Although the victim agreed

2

to purchase a television from the defendant for $75.00, the victim was adamant that the pistol was not for sale. By then, the victim had placed the pistol, a reloading die, and two boxes of ammunition in a bedroom closet. The defendant again asked for and received permission to use the restroom. When he did not return for several minutes, the victim looked for the defendant and discovered him coming out of the bedroom where the pistol was stored. At that point, the victim directed the defendant to leave the bedroom whereupon both men left the apartment to attend a picnic.

The defendant stayed at the picnic for only a short period of time. Later, when the victim discovered that he had forgotten fireworks he had intended to display, he returned to his apartment. As he approached the apartment building, he saw a vehicle which resembled that of the defendant. When he walked to the back door of his unit, he found that the door was ajar. The outside light had been turned off and a stone had been used to break the glass. When the victim checked the inside of his apartment, he discovered that only his pistol, the ammunition, and the reloading die were missing. Several other guns, which were also stored inside the apartment, had not been stolen.

The victim reported the crime to the Sullivan County Sheriff's Department and Officer Joe Delp investigated. On the following Monday, the victim and his wife drove throughout Kingsport looking for the defendant. When they saw him walking along Center Street, the defendant ran but the victim caught up with him in his car. According to the victim, the defendant immediately apologized for stealing the pistol and offered $600.00 in restitution. When the victim stated that he would rather have the gun, the defendant remarked that he did know whether he could get it back. The defendant never returned the gun and never compensated

3

the victim for his loss.

The defendant did not testify and offered no proof at the trial.

Initially, the defendant claims that the state failed to prove beyond a reasonable doubt that he burglarized the apartment or that he took the items with the intent to deprive the owner thereof, as required by the theft statute. The defendant contends that the evidence did not exclude the possibility of another having burglarized the apartment and having taken the pistol, the ammunition, and the reloading die. He argues that the failure on the part of the victim to identify the defendant as a suspect when the matter was first reported to the police supports his argument that the evidence is insufficient. The defendant submits that the victim was motivated to lie by the lack of insurance coverage for the items stolen and his desire to identify a suspect with a prior criminal record in order to extort a settlement.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after a review in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405 (Tenn. 1983); Tenn. R. App. P. 13(e). This court may neither reweigh nor reevaluate the evidence. Nor may a court substitute its inferences for those drawn by the trier of fact. Likas v. State, 286 S.W.2d 856 (Tenn. 1956).

Tenn. Code Ann. § 39-14-402 provides that a "person commits

4

burglary who, without the effective consent of the property owner ... (3) [e]nters a building and commits or attempts to commit a felony, theft or assault .... The offense is aggravated when the burglary is committed in a place of "habitation." Tenn. Code Ann. §§ 39-14-401 to -403.

A misdemeanor theft is committed when the value of the property is $500.00 or less if the perpetrator "with the intent to deprive the owner of property ... knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. §§ 39-14-103, -105.

In this instance, there was circumstantial evidence that the defendant entered the apartment of the victim without his consent and for the purpose of committing a theft. Here, of course, the jury was entitled to accredit the testimony offered by the witnesses of the state and reject the defense theory. The record shows that the state offered proof against the defendant of each of the elements of theft: (1) an intent to deprive the owner of the property; (2) knowingly obtaining control of the property; and (3) a failure to gain the consent of the owner. It was the jury's prerogative to accept the testimony of the victim who claimed that the defendant acknowledged having stolen and then having sold the pistol. Certainly, the accompanying circumstances proved by the state at trial tend to corroborate the claim.

Next, the defendant complains that the trial court erred by imposing the maximum sentence possible for aggravated burglary and by ordering the sentences to be served consecutively.

When there is a challenge to the length, range, or manner of service of

5

a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The record in this case demonstrates that the trial court made adequate findings of fact.

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however,

6

additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230.  The Sentencing Commission Comments adopted the cautionary language.  Tenn. Code Ann. § 40-35-115.  The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1)  The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

> (2)  The defendant is an offender whose record of criminal activity is extensive;

> (3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

> (4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

> (5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

> (6)  The defendant is sentenced for an offense committed while on probation;

---

[1]The first four criteria are found in Gray.  A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion.  See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

(7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present:  (a) that the crimes involve aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses.

In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct."  The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules."  Wilkerson, 905 S.W.2d at 938.

Initially, the defendant concedes that the trial court, which found five enhancement factors applicable, properly determined the presence of four enhancement factors under Tenn. Code Ann. § 40-35-114:  (1) a previous criminal history of criminal convictions ... in addition to those necessary to establish the appropriate range; (8) a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (13) (B)  the felony was

8

committed while on ... parole; and (20) that the defendant was adjudicated to have committed a delinquent act as a juvenile that would have constituted a felony if committed by an adult.

The defendant argues that he did not violate a position of private trust, as adjudged by the trial court, because, in fact, the victim did not actually entrust the victim with the items stolen and was so suspicious of his behavior that he sought out the defendant after the latter's second trip to the restroom. The defendant also contends that the trial court did not give sufficient weight to a mitigating factor, Tenn. Code Ann. § 40-35-113(1), that "the defendant's criminal conduct neither caused nor threatened serious bodily injury."

As a Range II offender, the defendant could have received a sentence as little as six years and as much as ten years. The record demonstrates that the trial court carefully considered each of the enhancement factors and expressed particular concern about the defendant's prior criminal history and his failure, on a number of occasions, to comply with a sentence involving release into the community. Those factors, in our view, would warrant an enhanced sentence. Moreover, there was a violation of private trust. The defendant and the victim had been in high school together and had known each other for over twenty years. The victim invited the defendant into his home based upon their long acquaintanceship, consented to his use of the restroom facilities, and invited him to attend an Independence Day picnic at his mother-in-law's residence. The defendant, in our view, took advantage of the knowledge he had acquired through the relationship both to identify the items he desired and to enter the apartment to commit a theft at a time he knew the victim and his wife would be absent. While the record demonstrates that the trial court gave little weight to the trust factor, this court

9

concludes that there was sufficient evidence of a violation of private trust.

Furthermore, the record shows that the trial court did, in fact, give some weight to the mitigating factor identified by the defendant (i.e., the absence of serious bodily harm) but concluded that that should not lessen the sentence from ten years. That, in our view, was a proper exercise of discretion. The conclusion is presumptively correct and one that this court will not disturb.

Finally, the defendant argues that the trial court erred by determining that the defendant was a professional criminal and by finding his prior record of criminal activity was so extensive as to warrant consecutive sentences. The defendant submits that the trial court erred by concluding that the public required a period of long-term protection from the defendant and that the effective ten-year, eleven month and twenty-nine day sentence reasonably related to the severity of the offenses.

The defendant's criminal history included a number of felony convictions and spanned over a period of thirteen years. There were several convictions for automobile burglary and felony theft and two prior aggravated burglaries. The defendant had been found guilty on prior occasions of vandalism and escape. Whereas the evidence did not support the trial court's conclusion that the defendant had "knowingly devoted [his] life to criminal acts as a major source of livelihood," it is nonetheless apparent that the defendant qualified as "an offender whose record of criminal activity is extensive...." Tenn. Code Ann. § 40-35-115(B)(1) & (2). Despite the fact that the criminal offenses committed by the defendant were, as argued by the defendant, "non-violent, non-threatening property offenses," the statute does not limit the term "extensive criminal activity" to purely

violent crimes. Here, the defendant's record was clearly extensive. In that regard, he qualified for a consecutive sentence. In our view, the trial court acted within its discretion when it determined that the aggregate sentence imposed fit the entirety of the circumstances.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
David H. Welles, Judge


_____
Joe G. Riley, Judge